**UNITED PARCEL SERVICE, INC., Relator,**

v.

**The Honorable John R. McFALL, 237th Judicial District Court Judge, Respondent.**

No. 07–96–0382–CV.

Court of Appeals of Texas, Amarillo.

Jan. 21, 1997.

Clark, West, Keller, Butler & Ellis, Allen Butler, Michael P. Maslanka, Theresa M. Gegen, Dallas, for Relator.

Boerner & Dennis, Don Dennis, Lubbock, for real party in interest, Greg Nix.

Before DODSON and QUINN and REAVIS, JJ.

QUINN, Justice.

United Parcel Service, Inc. (UPS) petitioned for a writ of mandamus. It requested that we direct the Hon. John R. McFall, of the 237th Judicial District Court of Lubbock County to compel the parties to submit their dispute to binding arbitration. As disclosed by the record, Greg Nix (Nix) sued UPS for retaliatory discharge under § 451.001 of the Texas Labor Code,[1] libel, and slander. For the reasons which follow, we conditionally grant the petition in part and overrule it in part.

### Background

Nix was employed by UPS. As such, he fell within the parameters of a collective bargaining agreement between UPS and the union representing its employees. The agreement contained three provisions of particular import. The first, article 36, read that:

> [t]he Employer [UPS] ... agree[d] not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, national origin, handicap, veteran status or age in violation of any federal or state law,

---

1. Section 451.001 of the Labor Code was previously codified at article 8307c of the Texas Revised Civil Statutes.

or engage in any other discriminatory acts prohibited by law....

The second, § 3, article 48, stated that the employer also agreed, along with the union, to submit to binding arbitration "any grievance" between the employees and employer which could not otherwise be settled by a committee known as the Southern Conference Area Parcel Grievance Committee (S.C.A.P.G.C.) and Deadlock Panel.[2] Finally, § 1 of article 48, defined grievance as "any controversy, complaint, misunderstanding or dispute arising as to [sic] interpretation, application or observance of any of the provisions of this Agreement."

Next, while employed with UPS Nix allegedly suffered an "on-the-job" injury which, he believed, entitled him to worker's compensation. A claim for such compensation was purportedly submitted by the individual. Thereafter, UPS allegedly terminated him for submitting the claim. In response, Nix sued the company for retaliatory discharge, libel, and slander on July 22, 1993.

Once UPS joined issue, discovery began. The employer sent Nix various discovery instruments including interrogatories and a request for the production of documents. Moreover, on May 14, 1996, Nix corresponded with the trial court and asked that the cause be set on its "next available jury docket." This it did, and the cause appeared as the 25th matter set for trial during the weeks of June 10th and 17th of 1996. But for one reason or another, the proceeding was not reached.

Several months passed. Then, UPS moved the trial court to dismiss the suit since Nix had failed to comply with the arbitration clause of the collective bargaining agreement. In that same motion, the employer also requested, "in the alternative" that the action be stayed "pending submission of Plaintiff's claim to the grievance and arbitration procedure." Also pled "in the alternative" was its motion for summary judgment "due to [Nix'] failure to raise his workers' compensation

retaliation claim during the ... [collective bargaining agreement's] grievance and arbitration procedure which ... [was] his exclusive remedy."[3] The trial court denied the motion, and UPS subsequently petitioned for mandamus.

### Preliminary Issues

Before turning to the crux of the argument, various preliminary matters must be addressed. First, we consider the scope of the relief sought. In doing so, we note UPS' concession, during oral argument, that the causes of action sounding in slander and libel were not subject to arbitration. Thus, Nix is free to pursue those allegations in the 237th Judicial District Court of Lubbock County, Texas.

■ Second, we determine whether UPS had an adequate remedy at law in the form of an appeal. Upon doing so, we note that the contract between the parties was a collective bargaining agreement. As such, it fell outside the scope of the Texas Arbitration Act. Tex. Civ. Prac. & Rem. Code Ann. § 171.001(a) (Vernon Supp.1996). So, the trial court's decision to deny arbitration was unappealable under § 171.017(a) of the Texas Civil Practice and Remedies Code, and mandamus was the appropriate vehicle through which to review that decision. Cantella & Co. v. Goodwin, 924 S.W.2d 943, 945 (Tex. 1996).

■ Third, we derive the particular guidelines which control our disposition of the controversy at bar. Doing so, we acknowledge that the duty to arbitrate under a collective bargaining agreement, like most other agreements, entails questions of contract. That is, arbitration is a matter of contract, and, because of this, one cannot be required to submit to arbitration that which he did not agree to so submit. AT & T Tech., Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986). Furthermore, in

2. The record before us failed to disclose for what a Deadlock Panel stood.

3. Though nowhere did UPS expressly ask the trial court to compel Nix to submit to arbitration, all parties agreed that the relief actually sought should be read as encompassing such a request. Thus, we do not consider whether the motion was sufficiently worded to afford UPS the relief sought here.

construing the contract to determine whether the parties obligated themselves to submit a particular dispute to arbitration, we apply the general rules used in interpreting most every contract.

■ Yet, we cannot forget other maxims which relate specifically to arbitration agreements. For instance, it must be remembered that public policy favors arbitration. *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995). Thus, any doubt as to whether a particular claim falls within the scope of an arbitration clause is resolved in favor of arbitration. *Id.* at 899. In other words, " '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656 (emphasis added). Moreover, the weight of this policy is so great that it effectively compels the court to presume that the matter is subject to arbitration, *id,* until the opponent proves otherwise. *Cantella & Co. v. Goodwin,* 924 S.W.2d at 944; *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d at 900.

■ Also must we remember to avoid placing emphasis upon the labels attached to the particular claims involved. That is, the nature of the cause of action is generally unimportant; rather, the focus lies upon the factual allegations of the complaint and their relationship to the subject matter encompassed by the arbitration clause. *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d at 900; *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2nd Cir.1987). If the allegations underlying the claim touch upon matters covered by the agreement, then the claim is subject to arbitration regardless of the legal label attached to it. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d at 846. For this reason, causes of action arising under statute (as opposed to contract) may be subject to arbitration if they "touch matters covered by," and despite not being specifically referenced in, the arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 624 n. 13 &

627, 105 S.Ct. 3346, 3352 n. 13 & 3354, 87 L.Ed.2d 444, 453 n. 13 and 455 (1985). Indeed, in *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the United States Supreme Court held that a clause providing for the arbitration of " 'any controversy or claim *arising out of or relating to this Agreement or the breach hereof'* " was sufficient to require arbitration of a claim founded upon a statute known as the California Franchise Investment Law. *Id.* at 15 n. 7, 104 S.Ct. at 860 n. 7, 79 L.Ed.2d at 15 n. 7. With this said, we now turn to the controversy at bar.

### Application of Law to Facts

Nix sued UPS alleging that it discharged him in retaliation for filing a worker's compensation claim. Furthermore, the particular cause of action arose under a statute which stated that an employer may not "in any ... manner *discriminate* against an employee" for seeking worker's compensation benefits. TEX. LAB. CODE ANN. § 451.001 (emphasis added). Given that the legislature expressly used the term "discriminate," it is utterly reasonable to conclude that the proviso deals with discrimination and the state's desire to prohibit same.

Next, the collective bargaining agreement at issue directed that "all grievances pertaining to matters described in ... Article [48] ... be referred to the S.C.A.P.G.C. or the Deadlock Panel." So too did it state that any grievance which could not be resolved by either body would undergo arbitration. Next, in defining "grievance," it included any controversy, complaint, misunderstanding, or dispute arising as to the interpretation, application or *"observance* of any ... provision[ ]" of the collective bargaining contract. Finally, a provision of the contract, namely article 36, dealt with the matter of discrimination and stated that UPS promised to avoid "engag[ing] in any ... discriminatory acts prohibited by law."

■ In comparing Nix' allegations to the collective bargaining agreement, we see that the former involved a subject matter expressly addressed in the latter, that is, discrimination. Moreover, in purportedly dis-

criminating against him, UPS arguably failed to observe a provision of the contract. Thus, his suit was tantamount to a complaint about the observance of a provision under the contract, and, as such it fell within the parameters of the arbitration clause.

That the legal source of Nix' complaint was statutory, as opposed to contractual, matters not. Again, it is the relationship between the facts asserted and subject matter encompassed by the arbitration clause which controls. *Prudential Securities, Inc. v. Marshall, supra; Genesco, Inc. v. T. Kakiuchi & Co., Ltd., supra.* And, those facts touch upon a matter addressed in the collective bargaining agreement and conceptually within the definition of "grievance." [4]

Simply put, if the arbitration clause in *Mitsubishi,* which we referred to above, can be read as encompassing contractual as well as statutory causes of action, we are hard-pressed to say "with positive assurance" that the one at bar "is not susceptible of an interpretation that covers the asserted dispute." *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656. Consequently, in refusing to compel the parties to arbitrate the matter, the trial court abused its discretion.

 Finally, and contrary to Nix' suggestion, the belatedness of the request by UPS for arbitration did not mandate a different result. As held by the Texas Supreme Court, delay alone is insufficient to effect a waiver. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (1996); *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d at 898–99. Rather, the party suggesting that the delay resulted in waiver must also show that he suffered some prejudice due to the delay. *Id.* At bar, Nix may have explained the extent of the delay, but he did not illustrate, by argument or evidence, how it prejudiced him. Thus, he did not carry the burden imposed by *EZ Pawn* or *Prudential.*

For the reasons stated above, we conditionally grant the writ of mandamus and

direct the trial court to order the parties to submit the retaliatory discharge claim to arbitration. Furthermore, the clerk of this court is instructed to issue the writ only if the trial court does not so order arbitration thirty days from the date of this opinion.

---

4. This is not to say that statutory causes of action will always be construed as falling within the scope of an arbitration clause. Since arbitration is a matter of contract, the parties are free to contractually exclude such claims via appropriate wording in the contract.