In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00090-CR


______________________________




NANCY R. WRIGHT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 276th Judicial District Court


Titus County, Texas


Trial Court No. CR13,948




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Nancy R. Wright pleaded guilty before a jury to possession of cocaine in an amount less than
one gram. The punishment range for the offense was enhanced by two prior felony convictions. The
jury assessed her punishment at five years' imprisonment.

 Wright does not challenge the sufficiency of the evidence. Rather, she contends the trial
court erred by interrupting her voir dire of the jury panel and commenting on her prior criminal
record. She contends the error caused her to plead guilty rather than not guilty, as she originally
intended.

 The first instance about which Wright complains occurred when, on voir dire, she asked
whether the venire members could set aside evidence they concluded was illegally obtained if the
trial court instructed them to do so. See Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.
2002). One of the venire members asked, "Who's going to tell me to sit [sic] it aside?" Defense
counsel answered, "If you find that it was illegally obtained there will be an instruction from the
Court to sit [sic] that aside, not consider it." The trial court then explained that if the facts of the case
warranted, the court would instruct the jury not to consider evidence it found beyond a reasonable
doubt was obtained illegally. The trial court explained that the venire members needed to answer
whether they could follow such an instruction. Wright did not object to the trial court's interjection.

 The second instance about which Wright complains occurred when she asked the venire
members whether they could consider the full range of punishment. Possession of less than one
gram of cocaine is a state jail felony. Tex. Health & Safety Code Ann. § 481.115(b) (Vernon
Supp. 2002). The punishment range for a state jail felony is not more than two years or less than 180
days' imprisonment. Tex. Pen. Code Ann. § 12.35(a) (Vernon 1994). However, Wright pleaded
true to the enhancement allegations, which raised the punishment range for the offense to that of a
second-degree felony, i.e., not more than twenty years or less than two years' imprisonment. See
Tex. Pen. Code Ann. § 12.33(a) (Vernon 1994), § 12.42(a)(2) (Vernon Supp. 2002).

 Wright asked whether the venire members could "consider giving somebody twenty years
for [possessing] less than one gram of cocaine." One of the venire members asked, "Would we know
if this was the first offense?" The trial court explained that in a bifurcated trial, the jury first
considers 

 the sole issue of whether a defendant is guilty or not guilty [and] . . . [i]f a defendant
is found guilty, then we go into what's called the second part or the punishment phase
of the trial, [at which] . . . one of the things, if it's available, that could be introduced
. . . is the prior criminal history of the defendant.


 Again, Wright did not object to the trial court's statements.

 The third instance about which Wright complains occurred just after the second. Wright
asked the panel:

 [Defense Counsel]: Is there anybody that thinks a hundred eighty
days is just not long enough?

 I'll ask one last question. Does anybody feel - 


 THE COURT: Let me go back. I need to rephrase, because I
don't want to leave a false impression. One of the things that may be introduced is
the prior criminal history of the Defendant, if any. Okay?

 Go ahead, [defense counsel].


 [Defense Counsel]: Anybody feel like there's any other things, that
for whatever reason, they ought not to be on the this [sic] jury? If you don't want to
talk about it, if the Judge will let us, we'll walk up and talk about it at the bench and
discuss it there.

 I thank you very much. I appreciate your time. I appreciate it.


 Wright contends the trial court erred because, by interrupting defense counsel and not
interrupting the State, it communicated to the panel a disrespect for defense counsel and an opinion
that he (defense counsel) was not to be believed. She also contends the trial court's references to the
prior criminal history of "the defendant" in its second and third interjections communicated to the
panel that Wright indeed had a prior criminal record.

 To preserve an issue for review, the record must demonstrate that (1) the complaint was made
to the trial court by a timely request, objection, or motion that stated the grounds for the requested
ruling with sufficient specificity to make the trial court aware of the complaint, unless the specific
grounds were apparent from the context; and (2) the trial court ruled on the request, objection, or
motion either explicitly or implicitly or refused to rule on the request, objection, or motion and the
complaining party objected to the refusal. Tex. R. App. P. 33.1(a). In the present case, Wright did
not make any objection, either at the time of the trial court's interjections or outside the jury's
presence. Therefore, she has not preserved the issue for our review.




 The judgment is affirmed.



 William J. Cornelius

 Chief Justice


Date Submitted: January 28, 2002

Date Decided: February 15, 2002


Do Not Publish



160;                                                          
                 
Original Mandamus Proceeding





                                                                                                                                            
                                           


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross



O P I N I O N

          Vernon Moore filed suit for retaliatory discharge and discrimination against his
former employer, Paris Packaging, Inc. Paris Packaging successfully moved the trial court
to order the parties to arbitration pursuant to a collective bargaining agreement. Months
later, Moore claimed he could not afford to pay for the arbitrator and, on that basis,
successfully moved the trial court to reconsider its prior order of arbitration. Paris
Packaging is now before this Court seeking a writ of mandamus ordering the Honorable
Jim D. Lovett to vacate his order granting Moore's motion to reconsider, to order the parties
to arbitration, and to stay all proceedings in the trial court pending resolution of the
arbitration.
Factual and Procedural History
          Paris Packaging operates a unionized facility in Paris, Texas. The employees at
Paris Packaging are represented by the United Food and Commercial Workers
International Union, Local 540 (the Union). Paris Packaging and the Union entered into
a collective bargaining agreement (the CBA) effective June 30, 1998. In the CBA, the
parties formally recognized that "should the company re-instate either the over-the-road
truck drivers or truck maintenance departments . . . UFCW Local 540 would retain
jurisdiction." In November 1998, in a memorandum of understanding, Paris Packaging and
the Union specifically modified the CBA to include in the bargaining unit over-the-road truck
drivers and truck maintenance employees. 
          Paris Packaging hired Moore in January 1999 as an over-the-road truck driver. 
Moore sustained an on-the-job injury January 31, 2000.


 He applied for and received
worker's compensation benefits for the injury sustained. He stayed absent from work for
more than 180 days.


 On October 17, 2000, Paris Packaging terminated Moore. 
          On April 1, 2002, Moore sued Paris Packaging for retaliatory discharge


 and
discrimination. Relying on Texas common law and federal labor law,


 Paris Packaging
moved to stay the proceeding and compel arbitration in accordance with the following
provisions in the CBA:
[S]hould dispute arise between an employee and the Company as to the
application and interpretation of . . . this Agreement, it shall be filed and
processed through the procedure outlined herein.

                     . . . .
 
The notice of appeal to arbitration shall be given in writing by the party
appealing the case to the other party within fifteen (15) working days after
presentation to the Plant Manager or his representative in Step 3 of
GRIEVANCE PROCEDURE.
On February 18, 2003, the trial court heard Paris Packaging's motion to compel arbitration
and granted such motion. 
          On September 5, 2003, Moore filed a motion to reconsider the prior order. For the
first time, Moore argues that forcing him to proceed with arbitration would violate his
guarantee to due process of law because he is unable to pay for the arbitration services. 
At the hearing on Moore's motion to reconsider, held February 19, 2004, Paris Packaging
urged the trial court to overrule Moore's motion on the basis of the following provision in
the CBA that obligated Paris Packaging and the Union to bear the cost of the arbitrator:
Any expenses incident to the services of the impartial arbitrator and the
Association shall be borne equal[ly] by the Company and the Union. All
other costs incidental to the arbitration proceedings shall be borne by the
party incurring the cost. 
Moore testified that, at the time of the hearing, he was not a member of the Union.


 He
acknowledged he had never contacted the Union regarding payment of its part of the cost
for the arbitrator under the CBA. 
          The trial court agreed with Moore's argument and granted his motion to reconsider. 
After it found that Moore did not have the means to pay for the arbitration services,


 the
trial court rendered the following three conclusions of law: 
1. It is unconstitutional and unconscienable [sic] to compel [Moore] to
arbitration, when [he] does not have sufficient funds to pay the arbitrator.
 
2. Requiring payment from someone who cannot afford to pay arbitration
fees undermines remedial and deterrent function of the anti-discrimination
law.
 
3. [Moore] has no standing to request the union to pay his arbitration
expenses as provided in the collective bargaining agreement.

Mandamus
          Mandamus will issue when a trial court commits a clear abuse of discretion for which
the relator has no adequate remedy at law. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992) (orig. proceeding). Mandamus review of a trial court's legal conclusions is much less
deferential than its review of the trial court's findings of fact. Id. at 840. A trial court has
no discretion in determining what the law is or in its application of the law to the facts. Id. 
Therefore, a trial court abuses its discretion if it misapplies the law to the facts of the case
before it. See Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 900 (Tex. 1995) (orig.
proceeding). 
          Because the agreement at issue here is a collective bargaining agreement, it falls
outside the scope of the Texas Arbitration Act.


 See Tex. Civ. Prac. & Rem. Code Ann.
§ 171.002(a)(1) (Vernon Supp. 2004); United Parcel Serv., Inc. v. McFall, 940 S.W.2d 716,
718 (Tex. App.—Amarillo 1997, orig. proceeding). Thus, the trial court's decision to deny
arbitration is not appealable under Tex. Civ. Prac. & Rem. Code Ann. § 171.098 (Vernon
Supp. 2004), and mandamus is the appropriate procedure for review of that decision. See
Cantella & Co. v. Goodwin, 924 S.W.2d 943, 945 (Tex. 1996) (orig. proceeding); United
Parcel Serv., Inc., 940 S.W.2d at 718. 
Analysis 
          Initially, we must focus our analysis on the relevant issue. Moore's response to
Paris Packaging's petition addresses issues that are not before us. For instance, Moore
argues that resolution of this matter will not involve interpretation of the CBA


 and that, at
any rate, the CBA cannot apply to him because he is an at-will employee and because he
did not sign the CBA or the modification. Rather, argues Moore, he signed another
document which attempted to bind him to arbitration, a document which bound him only
and, thus, was unenforceable.


 The trial court made its determination, however, based on
three conclusions of law, none of which discuss the subject matter of the dispute as it
relates to the arbitration agreement or the relevance of Moore's failure to sign the CBA. 
The trial court expressly limited its decision to one based on Moore's argument that he was
unable to pay for the arbitration. 
          Unions are obligated to represent the interests of all employees in a bargaining unit
governed by a collective bargaining agreement, regardless of whether the employee is a
union member. See Quesnel v. Prudential Ins. Co., 66 F.3d 8, 11 (1st Cir. 1995); Roscello
v. Southwest Airlines Co., 726 F.2d 217, 224 (5th Cir. 1984); Smith v. Sheet Metal Workers
Int'l Ass'n, 500 F.2d 741, 749 (5th Cir. 1974); Turner v. Air Transp. Dispatchers' Ass'n, 468
F.2d 297, 301 (5th Cir. 1972). This means union membership is irrelevant to the
applicability of a collective bargaining agreement. See Saunders v. Amoco Pipeline Co.,
927 F.2d 1154, 1156 (10th Cir. 1991); Hodges v. Atchison, T. & S.F. Ry., 728 F.2d 414,
417 (10th Cir. 1984). Rather, an individual employed in a craft governed by a collective
bargaining agreement is bound by the terms of that agreement, regardless of his or her
union membership. See Saunders, 927 F.2d at 1156; Baker v. Amsted Indus., Inc., 656
F.2d 1245, 1248–49 (7th Cir. 1981). Contractual provisions of a collective bargaining
agreement, including those covering wages and conditions, apply equally to all employees,
whether union or nonunion. See Wallace Corp. v. Nat'l Labor Relations Bd., 323 U.S. 248,
255 (1944); Hammons v. Adams, 783 F.2d 597, 601 (5th Cir. 1986); Holley v. Painters
Local Union No. 318, 376 S.W.2d 44, 47 (Tex. Civ. App.—Fort Worth 1964, writ ref'd
n.r.e.).
          Moore's testimony that, at the time of the hearing on his motion to reconsider, he
was not a member is irrelevant. In fact, Moore's membership status is entirely irrelevant
in that, regardless of whether he was a member, even at the time of his injury and
termination, the CBA would apply because Moore belonged to the bargaining unit for which
the CBA specifically provided. By the terms of the modified CBA, Moore, as an over-the-road truck driver, falls within the parameters of the CBA between his employer and the
Union. Therefore, Section 3 of Article 5 of the CBA expressly requires Paris Packaging
and the Union to pay for the services of the arbitrator in this dispute.


 
Conclusion
          The trial court's conclusion that Moore had no standing to enforce the payment
provisions in the CBA represents a misapplication of the law to these facts and, thus,
constitutes an abuse of discretion. Having determined that Paris Packaging has no
adequate remedy at law for the trial court's decision, we conditionally grant Paris
Packaging's petition for writ of mandamus. The writ will issue only if, within thirty days of
this opinion, Respondent, Honorable Jim D. Lovett, has failed to vacate the order
reconsidering his prior order, to order the parties to arbitration, and to stay the proceedings
in the trial court pending resolution of the arbitration.


                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      May 24, 2004
Date Decided:         May 25, 2004